## MATHEW LOYD v. THE STATE.

### No. 2792. Decided June 1, 1904.

**1.—Assault with Intent to Murder—Insult of Female Relative.**

While the statute requires the accused to act on the first meeting after he may have been informed of the insult toward a female relative in order to reduce the homicide to manslaughter and an assault with intent to murder to an aggravated assault; the doctrine has been judicially interpreted to mean the first meeting after the accused believed in the truth of the accusation, or if some new cause bearing on this accusation has been brought to the attention of the defendant.

**2.—Same—Adequate Cause.**

Where defendant was informed that the deceased had had sexual intercourse with defendant's wife and he had thereafter met the deceased and

had not resented the insult, because he did not fully believe it, and that thereafter defendant's wife confessed to him her improper relations with deceased, whereupon he assaulted deceased with a pistol, the offense would have been manslaughter had death ensued, or otherwise aggravated assault.

Appeal from the District Court of San Augustine. Tried below before Hon. Tom C. Davis.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

No brief for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, Judge.—Appellant was convicted of assault with intent to murder, and his punishment assessed at confinement in the penitentiary for a term of two years; hence this appeal.

The indictment under which appellant was convicted charged him with murder. The court submitted this issue, and also submitted assault with intent to murder. The proof justified this course, inasmuch as the testimony tends to show that appellant assaulted deceased with a pistol, and while he and deceased were engaged in a duel with pistols, the father of appellant came up and shot deceased with a shotgun, which caused his death. The evidence fails to disclose any conspiracy between Simon Loyd (appellant's father) and appellant.

The only proposition that we need to discuss is the failure of the court to give appellant's requested special instruction. In this connection we state enough of the facts to show the issue presented in connection with this requested charge. The proof shows that appellant was a schoolteacher, and taught school some distance from home, which necessitated his absence during the week. On such occasions his wife remained at home. In his absence a nephew stayed at his home with his wife. This nephew reported to appellant some time before the homicide that he saw appellant's wife in bed with deceased. After this, however, the evidence shows that appellant met deceased and had conversations with him. Subsequently, however, and just the night before the homicide, there is evidence to the effect that appellant asked his wife about the matter, and she confessed to him that deceased had been having carnal intercourse with her. The next morning (which was Monday) appellant, instead of going to his school, remained at home. Deceased rode up to the place, when appellant went out with his pistol, an altercation ensued, and he drew his pistol and began firing at deceased, who returned the fire. In this connection appellant, who testified in the case, states while his nephew had told him of the intercourse between his wife and deceased, he was not satisfied it was true, and did not believe it until his wife told him of it on the night before.

He also claims that when he want out to see deceased in regard to it, deceased attacked him first with his pistol, thus claiming self-defense. The court charged in favor of defendant, on an insult to a female relative, and limited appellant's right to manslaughter or aggravated assault to a first meeting after having been informed of such insult. Appellant, in connection with that phase of the case, requested the following special instruction: "In addition to the charge heretofore given, you are further charged that if the evidence in this case convinces you that defendant had been informed by some one that his wife was unfaithful to him and intimate with deceased, Frank Kelly, or that he was informed of facts from which he might conclude that such relations were existing between his wife and deceased; and if you further find that the meeting of defendant and deceased at the time of the difficulty between them was not the first meeting between them, then the defense of shooting at deceased, if you find that he shot at him on this account and no other, would not be available to him—unless you further find from the evidence that from this information so received defendant was not convinced of his wife's relationship with deceased until later, and that after such subsequently acquired information he so attacked the deceased and that the attack, if any, was by reason of such subsequent information and was at the first meeting of defendant with deceased after such subsequent information so received by him, in such event defendant would be guilty only of an aggravated assault." It occurs to us that, from the evidence in this case, the court should have given in charge to the jury the phase of the case as presented in said requested special instruction. While the statute requires the party to act on the first meeting after he may have been informed of the insult toward a female relative, yet in its application to the varying phases in which this defense can be raised to reduce the degree from murder to manslaughter, where a homicide has occurred, and from an assault with intent to murder to an aggravated assault where death has not resulted, the court's have modified this doctrine, or rather interpreted it to mean the first meeting after a party believes in the truth of the accusation; or if some new cause bearing on this accusation has been brought to the attention of such party. This doctrine is illustrated in Richardson v. State, 28 Texas Crim. App., 216; and a case more nearly in point is that of Tucker v. State, 50 S. W. Rep., 711. These opinions appear to consider the subsequently acquired information as in the nature of a new insult calculated to arouse and inflame passion. In this case the evidence shows that after appellant had been informed of the insulting conduct of deceased towards his wife, he did not give full credence to it, and only after his conversation with his wife on the night before the homicide, did he fully believe deceased had been guilty of a liaison with his wife. This subsequent communication by his wife induced the belief on his part, and may have so inflamed his mind as to have rendered him incapable of cool

reflection. At any rate, in our opinion this exact phase of the case should have been presented to the jury, in order that they might pass on the adequate cause and appellant's state of mind at the time he encountered deceased. As it was, they were limited to a first meeting after appellant learned of the insult about his wife, and the evidence showing that he had met deceased several times in the interim, he was entirely cut off from adequate cause on said account, although he may have believed in the fidelity of his wife at such times when he may have met deceased, and was not convinced of deceased's guilty connection with her until she confessed it to him, which was on the night preceding the homicide. Because of the failure of the court to present this view of the case to the jury, the judgment is reversed and the cause remanded.

*Reversed and remanded.*